UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
:
JOSE ROSARIO,                                              :
                                                          :
                                    Plaintiff,            :          12 Civ. 4795 (PAE)
                                                          :
                                                          :          OPINION & ORDER
                    -v-                                   :
                                                          :
NEW YORK CITY and WARDEN CARLTON                          :
NEWTON,                                                   :
                                                          :
                                    Defendants.           :
                                                          X
------------------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Jose Rosario, proceeding *pro se*, brings this lawsuit, pursuant to 42 U.S.C.

§ 1983, against defendants New York City (the "City of New York") and Warden Carlton

Newton, alleging that his confinement in the custody of the New York City Department of

Correction ("DOC"), after the state parole board had approved him for parole, violated his

constitutional rights to due process and equal protection.  Defendants move to dismiss the

Complaint for failure to state a claim.  For the reasons that follow, the motion is granted.

I.      **Background**[1]

   A. **Factual Background**

   The facts underlying Rosario's detention in DOC custody, and the allegations stemming

from that detention, are scattered in bits and pieces throughout his submissions.  Pieced together

and construed liberally, the facts relevant to Rosario's claims, in this case,[2] are as follows.

   On December 15, 1989, Rosario was convicted of criminal possession of a controlled

substance in the second degree in Supreme Court, New York County, and sentenced to a term of

---

[1] The following account of the facts is drawn primarily from the Complaint.  However, because
Rosario is proceeding *pro se*, the Court also considers factual allegations contained in Rosario's
two submissions in opposition to defendants' motion to dismiss, to the extent consistent with the
Complaint. *See, e .g., Braxton v. Nichols*, No. 08 Civ. 8568 (PGG), 2010 WL 1010001, at *1
(S.D.N.Y. Mar. 18, 2010) (collecting cases); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir.
1987) (considering, in addition to allegations in complaint, *pro se* plaintiff's affidavit in
opposition to motion to dismiss).  Those two submissions are: (1) a document, filed on February
14, 2013, entitled "Notice of Motion to Deny Motion to Dismiss," *see* Dkt. 25 ("Rosario Br.");
and (2) a declaration filed on April 12, 2013, *see* Dkt. 28 ("Rosario Decl.").

The Court also takes judicial notice of information obtained via the New York State Department
of Corrections and Community Supervision ("DOCCS") Inmate Lookup System and the
Connecticut State Department of Correction Offender Information Search. *See Tribble v. City of
N.Y.*, No. 10 Civ. 8697 (JMF), 2013 WL 69229, at *1 n.1 (S.D.N.Y. Jan. 3, 2013); *Williams v.
City of N.Y.*, No. 07 Civ. 3764 (RJS), 2008 WL 3247813, at *2 n.3 (S.D.N.Y. Aug. 6, 2008).
Finally, the Court takes judicial notice of the existence of a removal order issued against Rosario
on March 8, 2001 by an immigration court in Hartford, Connecticut. *See Global Network
Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (on motion to dismiss, court
may take notice of public records to establish their existence, not for the truth of the matters
asserted therein).  A copy of that order (the "Removal Order") is attached as Exhibit A to the
January 14, 2013 Declaration of John Buhta, *see* Dkt. 20 ("Buhta Decl.").

Because the pagination is inconsistent throughout Rosario's submissions, the Court's citations to
them refer to the page numbers reflected on ECF.

[2] Many documents appended to Rosario's filings appear to relate to claims that Rosario has filed
against various defendants in different courts. *See Rosario v. N.Y. State Div. of Parole*, 923
N.Y.S.2d 367 (3d Dep't 2011); *Rosario v. N.Y. Div. of Parole*, No. 9:10-CV-0001 (LEK/RFT)
(N.D.N.Y. 2011); *Rosario v. Denalver*, No. 13 Civ. 999 (LAP) (S.D.N.Y. 2013).

five years to life. *See* Rosario Br. 12. On May 20, 1994, he was released to parole supervision. *Id.* at 15.

In November 1999, Rosario, who is also known as William Pagan, *see id.* at 41, was taken into Connecticut state custody. In July 2000, he was sentenced to a maximum term of 18 years. *See* Connecticut State Department of Correction, Offender Information Search ("CT Inmate Lookup"), http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=278476 (last visited May 15, 2013).[3]

On December 22, 2000, Rosario was briefly returned to Supreme Court, Bronx County, where he was sentenced to a term of six years to life for criminal possession of a controlled substance in the second degree. This resulted from a 1996 arrest. *See* DOCCS Inmate Population Information Search ("NY Inmate Lookup"), http://nysdoccslookup.doccs.ny.gov (last visited May 15, 2013);[4] *see also Rosario v. N.Y. State Div. of Parole*, 923 N.Y.S.2d 367 (3d Dep't 2011). Rosario was then returned to Connecticut prison.

On March 8, 2001, an immigration court in Hartford issued an order of removal directing that Rosario be removed to the Dominican Republic. Buhta Decl. Ex. A (the "Removal Order"). He was not removed, however, and continued to serve his Connecticut sentence. On some date in 2011 or 2012,[5] Rosario was transferred into custody of the City of New York Department of

---

[3] Rosario's information is accessible through this online resource by entering his CT DOC inmate number, 278476, or by searching for William Pagan.

[4] Rosario's information is accessible through this online resource by entering his New York State Identification Number: 04269169P. *See* Compl. 12. The search yields three different entries for Rosario, each relating to a different period of incarceration in DOCCS custody. The entry corresponding to his current incarceration is labeled with the Department Identification Number (DIN) 12R2233.

[5] This date cannot be ascertained with certainty on the record before the Court. The Court notes that, according to two decisions from other courts, Rosario remained in Connecticut custody as

3

Correction ("DOC"). *See* CT Inmate Lookup. The DOC held Rosario at the Otis Bantum

Correctional Center ("OBCC") on Rikers Island until July 9, 2012, when he was transferred to

the custody of the State of New York Department of Corrections and Community Supervision

("DOCCS"). *See* NY Inmate Lookup; *see also* Rosario Br. 3, 5 (listing July 9, 2012 as the end

of his detention in OBCC). Rosario continues to be held in the custody of DOCCS at

Washington Correctional Facility. *See* NY Inmate Lookup; *see also* Rosario Decl. 6

(representing that, as of April 9, 2013, he continued to be held in DOCCS custody).

The documents attached to Rosario's submissions reflect several events bearing on his

parole status. These events are important to Rosario's allegations. First, on April 9, 2012,

Rosario received a notice from DOCCS, stating that he was in violation of the terms of his parole

and that a final hearing on the alleged parole violation would be held on April 19, 2012 at Rikers

Island. Rosario Br. 41; *see also* Compl. 4 (referring to parole violation warrant). The parole to

which this document refers appears to be Rosario's parole based on the 1989 conviction, because

it carries the Department Identification Number (DIN) associated with that conviction: 89T4927.

*Compare* Rosario Br. 41, *with id.* at 12, 15; *see also* NY Inmate Lookup. Second, as reflected in

another document attached to the Complaint, albeit one that is partly illegible, Rosario's final

parole hearing was, apparently, held on May 3, 2012 at Rikers Island. Compl. 10. Third, on

May 9, 2012, the state parole board sent Rosario a notice that it had granted parole for him. *Id.*

at 12, 16. This notice also bears the DIN number associated with Rosario's 1989 conviction. *Id.*

---

of early 2011. *See Rosario v. N.Y. State Div. of Parole*, 923 N.Y.S.2d 367 (3d Dep't 2011)
(dated May 26, 2011); *Rosario v. N.Y. Div. of Parole*, No. 9:10-CV-0001 (LEK/RFT) (N.D.N.Y.
2011) (dated March 18, 2011). Rosario's allegations in this Complaint suggest that he was in
DOC custody as early as April 2012. *See* Rosario Br. 41. Because Rosario does not challenge
his incarceration before April 2012, the exact date on which he was transferred is immaterial.

Rosario alleges that his continued detention, after he was granted parole, violated his due process and equal protection rights. *See* Compl. 7–9. Rosario alleges that he sustained psychological and emotional injuries stemming from this period of confinement. He seeks $1.5 million in compensatory damages for "illegal detention in prison, and psychological and mental distress, emotion and anxiety anguish [*sic*], lack of sleep, and a great deal of stress." *Id.* at 18.

### B.  Procedural History

On June 18, 2012, Rosario filed his Complaint. Dkt. 2. On January 14, 2013, defendants moved to dismiss. Dkt. 19–21. On February 14, 2013, Rosario filed a submission in opposition. Dkt. 25. On March 27, 2013, defendants filed a reply. Dkt. 26. On April 12, 2013, Rosario filed a declaration in further opposition to defendants' motion. Dkt. 28.

## II.   Applicable Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A district court must therefore accept as true all well-pleaded factual allegations in the complaint and draw all inferences in the plaintiff's favor. *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("We review the district court's grant of a Rule 12(b)(6) motion to dismiss *de novo,* accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."). A complaint should be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, where the plaintiff's claims have not been "nudged  . . . across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

District courts are "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting the allegations "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

**III.  Discussion**

Rosario argues that his continued detention at OBCC by the City of New York and Warden Newton, after the state parole board had cleared him for release on parole, violated his constitutional rights. *See* Compl. 7–9. Although Rosario admits that a form I-247 Immigration Detainer-Notice of Action had been issued against him pursuant to 8 C.F.R. § 287.7, he argues that that detainer allowed the DOC to hold him for up to only 48 hours after he otherwise would have been released, not the more prolonged period for which he remained in DOC custody. *See* Compl. 4, 8.

Defendants counter that the 48-hour limit does not apply in this case, because Rosario was otherwise detained and was subject to a final order of removal. *See* Def. Br. 11. They further argue that Rosario was held in DOC custody pursuant to the removal order for (by their calculation) only 67 days after he was cleared for parole—a permissible length of time under the

6

relevant statute and Supreme Court case law. *See id.* at 11–13. Thus, defendants argue, Rosario has not alleged facts sufficient to state a violation of his constitutional rights.[6] The Court agrees.

## A. Detention Pursuant to 8 C.F.R. § 287.7

Rosario's main claim is that he was held in DOC custody pursuant to an immigration detainer issued against him under 8 C.F.R. § 287.7, but that the authority to detain him under that detainer expired 48 hours after he was cleared for parole. *See* Compl. 4, 8. An immigration detainer "serves to advise another law enforcement agency that the Department [of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." It constitutes "a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody." 8 C.F.R. § 287.7(a); *see also Roldan v. Racette*, 984 F.2d 85, 88 (2d Cir. 1993). That regulation provides: "Upon a determination by the Department to issue a detainer for an alien *not otherwise detained by a criminal justice agency*, such agency shall maintain custody of the alien for a period not to exceed 48 hours." 8 C.F.R. § 287.7(d) (emphasis added). As defendants

---

[6] Defendants also argue that Rosario has not exhausted his claims as required under the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). Under the PLRA, exhaustion is an affirmative defense; Rosario therefore was not required to plead exhaustion in the Complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). However, "that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* Dismissal for failure to state a claim is appropriate where it is clear from the face of the Complaint that the plaintiff has not exhausted his administrative remedies. *See id.* at 214–16; *Simmons v. Cripps*, No. 12 Civ. 1061 (PAC)(DF), 2013 WL 1285417, at *2 (S.D.N.Y. Mar. 28, 2013); *Kasiem v. Switz*, 756 F. Supp. 2d 570, 574 (S.D.N.Y. 2010). Defendants' argument, based on the Complaint, that Rosario has failed to exhaust, is substantial: Rosario admits that he did not file a grievance while in DOC custody, *see* Compl. 13, and took conflicting positions as to whether he believed his claim to be grievable, *see id.* (Questions 4(C) & (D)); he ultimately asserts that it is not, *see* Rosario Br. 4; Rosario Decl. 1. The Court does not, however, rule on exhaustion grounds, because, for the reasons stated *infra*, Rosario's claim is plainly deficient on the merits. *See Woodford v. Ngo*, 548 U.S. 81, 101 (2006) (because exhaustion is not jurisdictional under PLRA, court may "dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies").

correctly note, the emphasized language makes clear that the 48-hour time period applies only where the alien was not otherwise detained. *See Kendall v. INS*, 261 F. Supp. 2d 296, 301 n.2 (S.D.N.Y. 2003) (§ 287.7(d) does not apply to alien remanded to custody in pending criminal case). Here, however, Rosario was otherwise detained: originally on account of the parole violation for his 1989 conviction, and later, as discussed *infra*, on account of the final order of removal. Accordingly, the regulation on which Rosario relies does not apply.

### B. Detention Pursuant to the Final Order of Removal

Although Rosario's Complaint focuses primarily on the application of 8 C.F.R. § 287.7, the Court also interprets Rosario to be making a second, related argument—as follows. On some date in April or May 2012, Rosario was cleared for a return to parole. If so, the only valid basis DOC could have had for detaining him from that point forward must have been the final removal order.[7] Thus, Rosario appears to argue, his continued detention by the DOC was tantamount to detention on behalf of federal immigration authorities. *See Gillies v. Strange*, No. 3:05 CV 1273 (SRU), 2005 WL 3307349, at *5–7 (D. Conn. Dec. 6, 2005) (holding that, after defendant was approved for release by state parole board, removal order was "being used as a tool of confinement" so long as prisoner remained in state custody; state authorities were merely acting as a "custodial agent" for federal authorities); *cf. Simmonds v. INS*, 326 F.3d 351, 354–56 (2d Cir. 2003) (final order of removal against alien currently incarcerated in state prison sufficient to establish that he is "in custody" of INS for purposes of federal habeas review). And, Rosario

---

[7] It appears that the decision to grant Rosario parole related solely to his 1989 conviction. On the record before the Court, it is unclear whether Rosario's 2000 conviction would have required his continued incarceration. *See* NY Inmate Lookup (noting that Rosario remains incarcerated pursuant to his 2000 conviction and has a parole hearing date of August 2013). On this motion to dismiss, given the ambiguous factual record, the Court assumes *arguendo* that, as of the date Rosario was granted parole, his 2000 conviction did not supply a basis for continued detention.

appears to claim, this detention was impermissibly long.  Accepting these factual premises as true for purposes of the motion to dismiss, the legal question presented, then, is how long DOC was lawfully permitted to detain Rosario pursuant to the removal order.[8]

Where, as here, an alien is subject to a final order of removal, the Attorney General "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). That 90-day removal period begins to run on the latest of three dates, including, as relevant here, "[i]f the alien is detained or confined, . . . the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(iii).  A standard grant of parole or discretionary release, as opposed to a conditional grant of parole for deportation only, qualifies as "release" for purposes of § 1231. *Duamutef v. INS*, 386 F.3d 172, 179 (2d Cir. 2004).  Therefore, where—as the Court assumes to be the case here—an alien has been granted parole and the only thing keeping him in state custody is a final order of removal, the fact that the alien remains in state custody subject to the removal order does not prevent the 90-day clock from running. *See Gillies*, 2005 WL 3307349, at *7; *see also Johnson v. Warden*, No. 3:08cv1377 (SRU), 2009 WL 1625711, at *3 (D. Conn. June 9, 2009) (stating that, as of petitioner's voted-to-parole date, he could seek an order recognizing the beginning of the removal period).  To hold otherwise would

---

[8] Insofar as Rosario alleges that he was detained improperly, the Court treats this as a due process claim. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Rosario also appears to challenge the DOC's failure to transfer him to federal or state custody, *see* Rosario Br. 5–6, but he has not alleged any basis for concluding that he has a cognizable liberty interest in being detained in federal or state, as opposed to DOC, custody. *See Olim v. Wakinekona*, 461 U.S. 238, 245–48 (1983); *see also Wallace v. Conroy*, 945 F. Supp. 628, 636 (S.D.N.Y. 1996) (no cognizable liberty interest in being promptly transferred from city to state custody, where plaintiff did not allege that conditions of confinement in city custody were significantly and atypically more onerous than conditions in state custody).  Finally, Rosario appears to argue that he was denied equal protection because he was treated differently than other prisoners subject to immigration detainers, who were released after the 48-hour time limit elapsed. *See* Rosario Br. 6–7.  That claim fails, however, because, as noted, the 48-hour time limit does not apply to Rosario.

9

be to create a "legal catch-22" wherein immigration authorities could bring about the indefinite detention of aliens by declining to pick them up from state custody. *Gillies*, 2005 WL 3307349, at *7 ("[Immigration authorities] cannot avoid becoming [petitioner's] custodian by indefinitely choosing not to take [petitioner] into physical custody, when the DOC is keeping [petitioner] in physical custody only because of the [immigration] detainer."); *see also Waldron v. INS*, 17 F.3d 511, 516 (2d Cir. 1993) (immigration authorities may not deprive alien of his right to seek assistance of consular authorities by holding deportation proceedings in state prison where he is incarcerated and claiming that he is not in INS custody).

Ninety days is not, however, a hard and fast deadline for removal. Certain categories of aliens "may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). This includes Rosario, because he was convicted of a crime "relating to a controlled substance." 8 U.S.C. § 1227(a)(2)(B)(i). Because § 1231(a)(6), on its face, appears to authorize indefinite detention of certain classes of aliens, the Supreme Court has "interpret[ed] the statute to avoid a serious constitutional threat" and held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). In so holding, the Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 701; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, Rosario's claims of impermissibly long detention against the City of New York and Warden Newton fail, because he was not detained in excess of the 90-day removal period, let alone the presumptively reasonable six-month period. As noted, it is not entirely clear from the

record on this motion when Rosario was indeed cleared for parole. One document appended to Rosario's Complaint appears to reflect that he was cleared for release on May 9, 2012. Compl. 12, 16. Another reveals that a parole violation hearing took place on May 3, 2012, *see id.* at 10, and Rosario specifically invokes May 3 as the date on which his claim arose, *see id.* at 2. Yet another document places his parole violation hearing on April 19, 2012. *See* Rosario Br. 41. Rosario also asserts at one point that his illegal incarceration began on April 9, 2012. *See id.* 3, 5.

It is clear, however, that Rosario was released from DOC custody into DOCCS custody on July 9, 2012.[9] Measuring from April 9, 2012—the earliest of the several dates offered by Rosario, *see* Rosario Br. 3, 5—Rosario was detained for exactly 90 days pursuant to the removal order. Measuring from May 9, 2012—the date on which it appears Rosario was indeed cleared for release, *see* Compl. 12, 16—Rosario was detained for only 60 days. Finally, measuring from May 3, 2012—the date Rosario specifically invokes in his Complaint, *see* Compl. 2—Rosario was detained for only 66 days. Thus, however measured, Rosario's detention in DOC custody pursuant to the removal order did not exceed the statutorily authorized 90-day period, nor did it approach the presumptively reasonable six-month period. *See Zadvydas*, 533 U.S. at 701. Accordingly, Rosario's claim must be dismissed.[10]

---

[9] If Rosario wishes to challenge his present detention in DOCCS custody, he may do so in a properly filed habeas petition. The Court does not construe Rosario to bring such a petition here, because he filed this Complaint before his transfer to DOCCS custody. *See* Dkt. 1. Additionally, Rosario has since filed a habeas petition in this Court, although it appears to attack his 1989 conviction, not his current incarceration. *See Rosario v. Denalver*, No. 13 Civ. 999 (LAP) (S.D.N.Y. 2013).

[10] Defendants also argue that, even if Rosario had established a constitutional violation, he has not alleged facts sufficient to support a claim of municipal liability on the part of the City of New York or personal involvement by Warden Newton. Although these are substantial arguments, the Court, having found no constitutional violation, need not address whether *Monell* or personal

## CONCLUSION

Defendants' motion to dismiss the Complaint is granted.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to terminate the motion at docket number 19 and to close the case.


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: May 15, 2013
       New York, New York

---

liability has been sufficiently pled.  *See Matican v. City of New York*, 524 F.3d 151, 152 (2d Cir. 1998); *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009).